[No. 4351.]

# H. M. NEWHALL, J. O. ELDRIDGE and GILBERT PALACHE *v.* THE CENTRAL PACIFIC RAILROAD COMPANY.

Liability of Common Carrier.—If the owner of goods sells the same on credit and ships them on a railroad to the vendee, as consignee, with bills of lading in the usual form, and while the goods are in transit the vendee becomes insolvent, and the vendor notifies the railroad company that he stops the goods; and if after such notification the vendee indorses the bill of lading in the usual course of business to a third person, who in good faith, and without knowledge of the insolvency, or of such notification, advances money thereon, to be repaid out of the proceeds of the goods to be sold by him at auction, the assignee, on tender of freight and charges, is entitled to receive the goods from the carrier, as against the vendor.

Appeal from the District Court, Fifteenth Judicial District, City and County of San Francisco.

Action to recover the value of merchandise alleged to have been converted by defendant to its own use. The merchandise was sold by Samuel Hart & Company, of Philadelphia, and Lawrence & Cohen, of New York, to Adelsdorfer Brothers, of San Francisco, about the 1st of December, 1871, and shipped immediately for San Francisco by the Pacific Fast Freight Line, which was a common carrier between the Atlantic coast and San Francisco, to be delivered to Adelsdorfer Brothers, at San Francisco. The defendant owned the railroad between Ogden and San Francisco, which formed a branch of the Fast Freight Line. On the 20th day of December, 1872, Adelsdorfer Brothers became insolvent. On the 3d day of January, 1872, at twenty minutes before 9 o'clock A. M., the vendors notified defendant that the consignees had failed and the goods were not paid for, and that they stopped them in the hands of the defendant. The goods were then in transit. About two hours after this notification, Adelsdorfer Brothers assigned the bills of lading to the plaintiffs, who were auctioneers, and who had been for more than fifteen years in the habit of receiving from the assignors such bills of lading, and selling the goods at auction on their arrival, and reimburs-

ing themselves out of the proceeds. The plaintiffs did not know of the insolvency of the assignors, nor did they know of the notification of the vendors until the 20th of February, 1872. The plaintiff exhibited the bills of lading to the defendant and demanded the goods, but the defendant refused to deliver them, and about the 20th of March, 1872, delivered them to the vendors. The court below rendered judgment for the plaintiffs, and the defendant appealed.

The other facts are stated in the opinion.

*Campbell, Fox & Campbell,* for the Appellant.

The right of stoppage *in transitu* having been in fact exercised by notices to the carrier, before the indorsement of the bills of lading to plaintiffs by vendees, that indorsement was inoperative, and vested in plaintiffs no greater interest than vendees then had. (*Lickbarrow* v. *Mason,* 1 Smith's Leading Cases, 843; *Gurney* v. *Behrend,* 3 Ellis & Blackburn, 622; *Mottram* v. *Heyer,* 5 Denio, 634; *Jones* v. *Earl,* 37 Cal. 631; 2 Kent's Com. 552; *The Tigress,* Law Journal Reports, vol. 32, part 3, p. 99; 6 Wharton, Penn. 418; Abbott on Shipping, 9th ed. 418; Kay's Shipmaster and Seamen, 460, 461; Jones on Bailments, appendix, p. 84; Cross on the Law of Lien and Stoppage, 247, marginal p. 389; 20 Wendell, 280, 282; 24 New York, 643; 3 Kernan, 628; *Brain* v. *Harden,* 2 Carrington & Paine, 52.

Brown's Law of Carriers, 233, says: "It is almost unnecessary to add, that when the right of stoppage *in transitu* has been exercised, the right is in the nature of a claim to lien, and not an absolute resumption of ownership;" citing 40 Vt. 145; 53 Penn. St. 335; 55 Penn. St. 300; 28 Md. 396; 21 La. Ann. 268.

And Robson on Bankruptcy, 310, says: "But the weight of authority and judicial dicta is in favor of the stoppage operating not as a rescission of the contract, but only as a restoration of his lien to the vendor;" citing many cases.

No case has yet been found which intimates that this property thus revested, or this lien thus resumed, can again be made ambulatory or set afloat by any subsequent act of the vendee. It has "revested" or "resumed."

Robson on Bankruptcy, p. 301, treating of stoppage *in transitu*, says: "A bill of lading indorsed by the consignor and sent by him to the consignee will not of itself divest the consignor's right to stop the goods" (citing 5 M. & S. 350; 3 East, 98; 8 M. & W. 442; 2 T. R. 674; and 8 E. & B. 410, 422); "the effect of a document of this sort being to give a right to possession, and not possession itself. But if the bill of lading is before notice of the stoppage of the goods *bona fide* indorsed by the consignee to a third party for value, the right of the transferee will prevail as against the vendor's *right* to stop."

*W. H. Rhodes and S. M. Wilson*, for Respondents.

The delivery and negotiation of the bills of lading, *bona fide*, and for a valuable consideration, destroyed the vendor's right of stoppage *in transitu*. (*Lickbarrow* v. *Mason*, 2 Term, 63; 2 Kent Com. 4 Am. Ed. 548–9.)

The right of stoppage *in transitu* is not an "unlimited right; for the vendor cannot exercise it if he has parted with the documents sufficient to transfer the property, and if the vendee, upon the strength of them, has sold the goods to a *bona fide* purchaser, without notice." (Houston on Stoppage in transitu, London, 1866, p. 1; 2 Kent, p. 547; Abbott on Shipping, p. 322; *Dixon* v. *Yates*, 5 B. & Ad. 313; *Wright* v. *Campbell*, 4 Burr, 2046; 7 Mass. 453; 9 Id. 65; 2 Wash. C. C. 299, 463; 1 Binn. 106; 1 Pet. 386; 16 Pick. 473; 13 Martin La. 261; 5 Met. 308.

In the case of *Jenkyns* v. *Osborn*, 8 Scott, N. R. (also reported in 7 M. & G. 679), Tindal, C. J., said: "The actual holder of an indorsed bill of lading may undoubtedly, by an indorsement, transfer a greater right than he himself has. It is at variance with the general principle of law, that a man should be allowed to transfer to another "a right which he has not; but the exception is founded on the nature of the instrument in question, which, being like a bill of exchange, a negotiable instrument for the general convenience of commerce, has been allowed to have an effect at variance with the general principles of law.

*W. W. Cope,* also for Respondents.

A bill of lading is negotiable. (Story on Sales, 344, 345.) The negotiable quality of a bill of lading is inherent, and cannot be taken away by extraneous circumstances, of which the assignee is ignorant. The law makes it negotiable for his protection, and it is enough that he pays a valuable consideration, and acts in good faith. These are the only conditions necessary to give validity to the assignment. The right of stoppage *in transitu* is a defeasible right, and has no effect upon the negotiable character of the bill of lading. (Benjamin on Sales, 719.)

A bill of lading is a contract with the carrier, and its negotiability continues until the arrival of the goods, and a refusal to deliver according to the contract. In other words, the carrier must dishonor it in order to terminate its negotiability. Until dishonored, it stands in the place of the goods, and a *bona fide* assignee may safely take it. (Benjamin on Sales, 683; 2 Law Rep. C. P. 57.) And the rights of such assignee cannot be affected by intermediate acts of the vendor. (1 Pet. 444; 5 Taunt. 557.)

A bill of lading is a muniment of title, and, as between the vendor and a *bona fide* assignee, it operates an estoppel. (1 Parsons on Ship. and Adm. 507; *Moore* v. *M. T. Bank,* 55 N. Y. 41.)

By the Court, CROCKETT, J.:

This case comes up on the findings, and there is, therefore, no controversy as to the facts; the only question being, whether the plaintiffs are entitled to judgment on the facts found. The facts necessary to a correct understanding of the only question of law in the case are, that a mercantile firm in New York sold certain merchandise on credit to a similar firm in San Francisco, and shipped the same in the usual course of business, by railway, to the vendees as consignees, under bills of lading in the usual form. The bills of lading were received at San Francisco by the consignees before the goods arrived; and while the merchandise was in transit, in the custody of the defendant as a common car-

rier, the consignees failed, and became insolvent, and thereupon the vendors notified the defendant in writing that they stopped the goods *in transitu*; that the vendees had become insolvent, and the goods were not paid for, and that they must not be delivered to the consignees, but to the vendors. The plaintiffs then were, and for many years had been, auctioneers and commission merchants, doing business in San Francisco, and had been in the habit of receiving from the consignees bills of lading, and goods under them, for sale on commission. About two hours after the notice of stoppage *in transitu* was served upon the defendant, the consignees indorsed and delivered the bills of lading to the plaintiffs, who, on the faith thereof and of the goods named therein, "advanced a sum of money to the consignees in the usual course of business;" and the sum so advanced was to be reimbursed out of the proceeds of the goods, which were to be sold at auction by the plaintiffs. At the time of the indorsement and transfer of the bills of lading to the plaintiffs, they had no notice that the consignees were in failing circumstances, or had failed, or that any notice of stoppage *in transitu* had been served upon the defendant. While the goods were still in the possession of the defendant as a common carrier, the plaintiffs, as holders, exhibited to the defendant the bills of lading, tendered the charges, and demanded a delivery of the goods, which was refused, and the action is to recover their value.

The question involved being one of great practical importance, it has been discussed by counsel, both orally and in printed arguments, with learning and ability. But after the most careful research, they have failed to call to our attention a single adjudicated case in which the precise question under review has been decided or discussed. There are numerous decisions, both in England and America, to the effect that where goods are consigned by the vendor to the vendee, under bills of lading in the usual form, as in this case, an attempt by the vendor to stop the goods *in transitu* will be unavailing as against an assignee of the bill of lading, who took it in good faith, for a valuable consideration, in the usual course of business, before the attempted stoppage.

The leading case on this point is *Lickbarrow* v. *Mason* (2 Term R. 63), the authority of which has been almost universally acquiesced in by the courts and text-writers, in this country and in England.   There being little or no conflict in the authorities on the point adjudicated in that case, it would be useless to recapitulate them here.   But it is important to ascertain the principles which underlie these decisions, that we may determine to what extent, if at all, they are applicable to the case at bar.   The first, and, as I think, the controlling point determined in these cases, is, that by the bill of lading the legal title to the goods passes to the vendee, subject only to the *lien* of the vendor for the unpaid price; which lien continues only so long as the goods are in transit, and can be enforced only on condition that the vendee is or becomes insolvent while the goods are in transit.

On the failure of each of these conditions, the right of stoppage is gone, and the lien ceases, even as against the vendee.   But it is further settled by these adjudications, that if the bill of lading is assigned, and the legal title passes to a *bona fide* purchaser for a valuable consideration *before* the right of stoppage is exercised, the lien of the vendor ceases as against the assignee, on the well-known principle that a secret trust will not be enforced as against a *bona fide* holder for value of the legal title.   In such a case, if the equities of the vendor and assignee be considered equal (and this is certainly the light most favorable to the vendor in which the transaction can be regarded), the rule applies that where the equities are equal the legal title will prevail.   But in such a case it would be difficult to maintain that the equities are equal.   The vendor has voluntarily placed in the hands of the vendee a muniment of title, clothing him with the apparent ownership of the goods; and a person dealing with him in the usual course of business, who takes an assignment for a valuable consideration, "without notice of such circumstances as render the bill of lading not fairly and honestly assignable," has a superior equity to that of the vendor asserting a recent lien, known, perhaps, only to himself and the vendee.   (*Brewster* v. *Sime*, 42 Cal. 130.)

These being the conditions which determine and control

the relative rights of the vendor and assignee, where the assignment is made *before* the notice of stoppage is given, precisely the same principles, in my opinion, are applicable when the assignment is made *after* the carrier is notified by the vendor. Notwithstanding the notice to the carrier, the vendor's lien continues to be only a secret trust as to a person, who, in the language of Mr. Benjamin, in his work on Sales, section eight hundred and sixty-six, takes an assignment of a bill of lading " without notice of such circumstance as renders the bill of lading not fairly and honestly assignable." The law provides no method by which third persons are to be affected with constructive notice of acts transpiring between the vendor and the carrier; and in dealing with the vendee, whom the vendor has invested with the legal title and apparent ownership of the goods, a stranger, advancing his money on the faith of this apparently good title, is not bound, at his peril, to ascertain whether, possibly, the vendor may not have notified a carrier—it may be on some remote portion of the route—that the goods are stopped *in transitu*. If a person, taking an assignment of a bill of lading, is to encounter these risks, and can take the assignment with safety only after he has inquired of the vendor, and of every carrier through whose hands the goods are to come, whether a notice of stoppage in transition has been given, it is quite certain that prudent persons will cease to advance money on such securities, and a very important class of commercial transactions will be practically abrogated. In my opinion the judgment should be affirmed, and it is so ordered.

Mr. Chief Justice WALLACE did not express an opinion.