ÆTNA NATIONAL BANK, Respondent, v. WATER POWER COMPANY *et al.*, Appellants.

Kansas City Court of Appeals, May 21, 1894.

1. **Bills of Lading**: WAREHOUSE RECEIPTS: STATUTE. Chapter 18, Revised Statutes, 1889, provides first a certain and substantial foundation for warehouse receipts and bills of lading to rest upon, and upon which only they are to be issued, and then declares them to be negotiable by written indorsement so that they may pass from hand to hand in commercial exchange that the buyer may know that he is purchasing a thing of substance and that the commodity named by them is actually in the hands of the issuer. It so prevents the issue of false bills of lading.

2. ———: ———: ———: ———. Where a railroad corporation in Missouri issues its bill of lading reciting it has received a car load of flour in apparent good order for transportation to New Orleans and at the time the flour is in the state of Kansas in the possession of another railroad transporting it to Missouri, such bill of lading is void and carries no title and the delivery of such bill of lading is not a delivery of the commodity named therein, though at the time of its issue the receiver of the bill surrendered the Kansas railroad bill of lading therefor.

3. ———: SYMBOLICAL DELIVERY: STATUTE. The delivery of a bill of lading is, in theory of law, for certain purposes, when properly indorsed, a symbolical delivery of the commodity it represents, but the statute was designed to distinguish between things symbolical and things in fact and requires the issuer of the bill of lading to have at the time of its issue possession of the commodity it represents; and this interpretation is not altered by the fact that the statute confers upon the injured party a right of action against the transportation company for issuing a false bill of lading.

4. ———: ———: ———: CONSTRUCTION. If the words of the statute are plain and unambiguous it does not need the aid of a reason for its enactment, its command stands for a reason; but many reasons are suggested for the enactment of the statute in question.

5. ———: ———: ———: DELIVERY. The delivery of the flour to the car at the shipping point in Kansas does not fill the requirement of the statute, as such delivery was not to a car in the control or possession of the Missouri railroad, nor where it could have possession of the car in its usual course of business. The bill of lading does not purport to be evidence of the delivery of the flour to the car belonging to and in possession of the Kansas railway company, but to acknowledge the receipt of merchandise at Kansas City by the Missouri company, for shipment to New Orleans.

6. Replevin: PLAINTIFF'S TITLE V. DEFENDANT'S TITLE. In replevin the plaintiff must rely on the strength of his own title and not on the weakness of the defendant's title, and where plaintiff's title is founded upon a fraudulent, void and unlawful bill of lading it is immaterial what the defendant's title is.

*Appeal from the Jackson Circuit Court.*—HON. ED. L. SCARRITT, Judge.

AFFIRMED.

*T. B. Buckner* for appellant.

(1) When the Water Power Company delivered the flour in controversy to the Atchison, Topeka & Santa Fe Railroad, at Hutchinson, Kansas, and had received its bill of lading therefor consigning the flour to N. F. Gorsuch, and caused the bill of lading to be delivered to N. F. Gorsuch, at Kansas City, then the delivery of said bill of lading was a delivery of said

flour; divested the title of the Water Power Company and vested it in N. F. Gorsuch. *Skilling v. Bowman,* 6 Mo. App. 76; *Railroad v. McLinley,* 32 Mo. App. 167; *Skilling v. Bowman,* 73 Mo. 66; *Newhall v. Railroad,* 51 Cal. 345; 2 Rorer on Railroads, p. 1345; Benjamin on Sales, sec. 813; *Dymock v. Railroad,* 54 Mo. App. 400. "The transfer of a bill of lading is a complete delivery of the goods, and divests the vendor's lien." 32 Mo. App. *supra.* Thus it will be seen that the right of stoppage *in transitu* is absolutely lost after the bill of lading has been delivered to the consignee and the right of innocent third parties has intervened. Benj. on Sales, secs. 862, 863. (2) If the above proposition is true, then there was a complete delivery of the flour and Gorsuch had the right to deliver the bill of lading to the Kansas City, Fort Scott & Memphis Railroad, and receive in lieu thereof its bill of lading consigning it to a point beyond its original destination. The act of the Water Power Company in voluntarily intrusting by delivery the *indicia* of title to Gorsuch, the plaintiff being a *bona fide* purchaser for value, and having trusted to the apparent ownership, got a good title as against the Water Power Company, who is estopped by its own act from setting up its title. 18 Am. and Eng. Encyclopedia of Law, p. 641; *Cowdery v. Venderburg,* 101 U. S. 572; *Moore v. Bank,* 55 N. Y. 41; *McNeil v. Bank,* 46 N. Y. 325; *Davis v. Bichstein,* 69 N. Y. 442; *Combes v. Chandler,* 33 Ohio St. 178; *Hern v. Cole,* 51 N. H. 287; *Bank v. Bank,* 71 Mo. 183; *Nehoff v. Orrelly,* 93 Mo. 162; *Dows v. Kidder,* 84 N. Y. 121; *Leigh Bros. v. Railroad,* 58 Ala. 165; *Dymock v. Railroad, supra.* (3) The claim that the Kansas City, Fort Scott & Memphis Railroad could not lawfully issue its bill of lading until the car containing the flour was actually received by it on its road, because of the

provisions of section 743 of the Revised Statutes, 1889, is not well taken. (4) We insist that, even if our construction of the above statute is not well taken, which construction as contended for we confidently assert to be the right one, still the defendants, respondents herein, have no right to make the defense. *First.* Because, having parted with the Atchison, Topeka & Santa Fe bill of lading and delivered the same to N. F. Gorsuch, the original owner delivered thereby the goods, and lost his property right in them. *Second.* Because, by that act Gorsuch was invested with the evidence of title, and on account of it obtained from the Kansas City, Fort Scott & Memphis Railroad its receipt and bill of lading, whose bill of lading the plaintiff holds, and the Water Power Company is now estopped to raise the illegality of the Kansas City, Fort Scott & Memphis bill of lading. See authorities cited under paragraph 2. In any event the defendants herein have parted with their possession and their right of possession to said flour, and can not claim or make any defense in this case. The principle of estoppel is firmly applied under such circumstances. 18 Am. and Eng. Encyclopedia of Law, p. 610.

ELLISON, J.—This is an action of replevin for a car load of flour in which judgment was given for the defendants by the court below and the plaintiff has appealed.

The facts necessary to an understanding of the legal points involved, are these: The defendant water company is a company doing business at Hutchinson, in the state of Kansas, and, on the seventeenth day of September, 1892, was the owner of the flour. On that day it entered into an agreement with one Gorsuch, residing and doing business at Kansas City, Missouri, for the sale of the flour to him, and, in pur-

suance of such agreement, said water company delivered the flour for shipment to the Atchison, Topeka and Santa Fe Railway Company, in one of that company's cars, number 19686, and took the company's bill of lading therefor consigning the flour to Gorsuch, at Memphis, Tennessee, by way of Kansas City. The defendant then sent the bill of lading, with draft for $194.43, due in thirty days, on Gorsuch, for the price of the flour, to the National Bank of Kansas City, with instructions to deliver the bill of lading to Gorsuch upon his acceptance of the draft. Said bill of lading and draft were duly received by the National Bank of Kansas City on September 19, and the draft was accepted by Gorsuch, the bank turning over to him the bill of lading. Gorsuch, on that day, took the bill of lading so issued by the Atchison, Topeka & Santa Fe (the flour not yet having arrived at Kansas City), to the Kansas City, Ft. Scott & Memphis Railway Company, which latter road, on the surrender to it of the bill of lading issued by the former at Hutchinson, Kansas, issued its bill of lading for the flour to said Gorsuch, in the usual form, reciting that it had received the flour in apparent good order and condition, and consigning the flour to Gorsuch, at New Orleans, with instructions to notify Harrison & Company, of the latter city. At this time the flour was in the possession of the Atchison, Topeka & Santa Fe Railway Company, and was in course of transit to Kansas City, from Hutchinson, Kansas. Afterwards, on the same day Gorsuch drew a draft in favor of plaintiff for $150, on said Harrison & Company, at New Orleans and delivered the draft and the bill of lading, last issued as aforesaid, to plaintiff. Three days thereafter, on September 21, the Water Power Company having learned that Gorsuch had become insolvent, notified the Atchison, Topeka & Santa Fe Railway Company

not to deliver the flour either to Gorsuch or the Kansas City, Fort Scott & Memphis road, said. Water Power Company intending thereby to exercise its right of stoppage *in transitu* on account of the unpaid purchase price of the flour. Thereafter, on September 23, the defendant Water Power Company replevied the flour from the Atchison, Topeka & Santa Fe, at Kansas City, Missouri, where it had by this time arrived. On a writ issued in that suit the flour was, taken by a constable; and afterwards on the twenty-sixth of September, this plaintiff brought this suit in replevin, making the Water Power Company, the constable and the Atchison, Topeka & Santa Fe defendants.

One ground of the defense is that the bill of lading issued by the Kansas City, Fort Scott & Memphis Railway Company, under which plaintiff claims, is made fraudulent and void by chapter 18, Revised Statutes, 1889, for the reason that said road had not received the flour at the time it issued the bill of lading. By the provisions of that chapter, no warehouseman, wharfinger, or other person, is permitted to issue a receipt or voucher for merchandise, grain, flour or other produce, to any person unless the same "shall have been actually received into the store or upon the premises of such warehouseman or wharfinger, or other person, and shall be in the store or on the premises aforesaid and under his control at the time of issuing such receipt." There are also further provisions intending to forbid the issuing of such receipts for money loaned, etc., unless the merchandise or other commodity was actually in the custody upon the premises of such warehouseman, etc. Then follows section 743 of said statute pertaining to bills of lading, reading as follows: "No master, owner or agent of any boat or vessel of any description, forwarder, or officer or agent of any railroad, transfer or transportation company, or other

person, shall sign or give any bill of lading, receipt or other voucher or document for any merchandise or property, by which it shall appear that such merchandise or property has been shipped on board of any boat, vessel, railroad car or other vehicle, unless the same shall have been actually shipped and put on board, and shall be at the time actually on board or delivered to such boat, vessel, car or other vehicle, to be carried and conveyed as expressed in such bill of lading, receipt or other voucher or document.''

This is followed by a provision making all such warehouse receipts and bills of lading negotiable by written indorsement in the same manner as bills of exchange and promissory notes; and also providing that the transferee of such receipts or bills of lading shall be deemed and held to be the owner of such goods, merchandise, grain, flour or other commodity. These several provisions are followed by two sections whereby it is declared to be a criminal offense, with severe punishment, for any warehouseman, wharfinger, forwarder, carrier or other person, or their agents, to violate any of the provisions we have stated, and preserving to any party injured by such violation a civil action against the wrongdoer.

The general scheme of this statute is evident. It first lays a certain and substantial foundation for warehouse receipts and bills of lading to rest upon and upon which only are they to be issued. And then proceeds to declare them to be negotiable by written indorsement so that they may be passed from hand to hand in commercial exchange and that the buyer thereof may know that he is purchasing a thing of substance and that the commodity named by them was actually in the hands of him who issued them. It is this reliance which gives them their value. It is such reliance that the purchaser builds upon and upon the faith of which

he invests his money. And so it has been declared by the supreme court that: "The title of this chapter and every section of the act, indicates the purpose of its enactment. It was designed to prevent the issue of *false bills* of lading and warehouse receipts." *State v. Kirby,* 115 Mo. 440. Applying this to the facts of this case we find the Kansas City, Fort Scott & Memphis Railroad Company has issued a bill of lading at Kansas City (the only pretense made is that the transaction occurred at Kansas City) which the conceded facts demonstrate to be false. It recites that the company has received on September 19, "in apparent good order," the car load of flour in controversy for transportation to New Orleans. The fact was that it had not received the flour, nor was it ever received, nor did the company's officers or agents know there was such flour in existence, except as they may have relied upon the bill of lading issued by the Atchison, Topeka & Santa Fe Company. These officers or agents did not know where such flour was, whether in Kansas or California or Canada. For, on their own theory of doing such business as shown in evidence, the Atchison, Topeka & Santa Fe Company may have done as they did and issued its bill of lading on the strength or faith of some other bill of lading, without having possession of the flour.

But plaintiff has pressed upon our attention the point that a delivery of a bill of lading is a delivery of the commodity named therein; and that therefore when Gorsuch delivered the Atchison, Topeka & Santa Fe bill of lading to the Kansas City, Fort Scott & Memphis Company he delivered the flour to that company. The delivery of a bill of lading is, in theory of law, for certain purposes, when properly indorsed, a symbolical delivery of the commodity it represents. A symbol is the representation of a thing, but is not the

thing itself; and if ever a statute was designed to distinguish between things symbolical and things in fact, it is the one now being construed. What stronger or more apt words could have been used by the lawmakers to convey the meaning that the commodity expressed to be received must have been *in fact actually* received? On plaintiff's theory the warehouseman's receipt could be delivered from warehouseman to warehouseman, each issuing upon the faith of the other *ad infinitum*. Thus the receipts freshly issued, each reciting a falsehood, could be negotiated for months after the commodity represented to be thus "delivered," as plaintiff would have it, had been destroyed by fire or flood. And thus the bill of lading could pass from one transportation company to another and finally be negotiated to an innocent purchaser long after the commodity represented by the bill of lading had been lost or destroyed in the numberless ways in which goods are lost and destroyed in the course of transportation. It is no answer to this to say that the injured party would have a right of action against the transportation company for issuing the bill of lading in such case. The injured party would have had such action in the absence of such statute. And while the statute preserves this action, such is not its prime object. Its object, it might be said, is to *avoid the necessity* of such actions by requiring the actual fact to be as represented by the bill. If the words of a statute be plain and unambiguous it does not need the aid of a reason for its enactment. It has been said that its command stands for a reason. But there are many reasons for this statute as we here interpret it. For instance, a person in St. Louis purchases a bill of lading which was issued the day before at Kansas City by a Kansas City railroad, reciting that such road had received a car of California fruit in good order, for continued transit to St. Louis.

The purchaser believing the bill to state facts and not symbols, parts with his money in the belief that the risks and dangers attending a shipment over such great distance of such a delicate commodity has been already substantially overcome. But he learns upon investigation that the fruit has never arrived at Kansas City—had not been received by such railroad—had not gotten further along in the course of transportation than the deserts of Nevada, where it perished from delay or other cause.

We have had cases in this court where potatoes and other vegetables had been shipped to Kansas City from Dakota and upon arrival here were found to have been frozen while in transit. Such vegetables are sometimes sent on to the southern markets. Is it allowable, under our statute, for a railroad company at Kansas City to issue a bill of lading reciting that it has received in good order such commodities, when in fact they are sidetracked in Dakota and will never reach here, and by this means impose on the purchaser of the bill of lading at Memphis, New Orleans or Mobile? We think it would be an absolute avoidance of the statute to permit it to be done.

There has been something said by counsel to the effect that there was an actual delivery of the flour at Hutchinson, Kansas, "to the car," and that this filled the requirement of the statute. It was so shown in evidence. But we do not think that this does fill the requirement of the statute. The delivery was not to a car in the control or possession of the Kansas City, Fort Scott & Memphis road. The delivery was not even to a car where that road could possibly have had possession in its course of business as a carrier; since the car was at a distance in another state and in the possession of another corporation, and which never did come into the possession of the Kansas City, Fort Scott

& Memphis road; having, as before stated, been taken from the possession of the Atchison, Topeka & Santa Fe road by replevin. Besides the bill of lading does not purport to be evidence of the delivery of flour "to a car" belonging to and in the possession of another railway company in Kansas. It purports to acknowledge the receipt of the merchandise at Kansas City by the Kansas City, Fort Scott & Memphis road for shipment to New Orleans.

Plaintiff seeks to show here that the defendant water power company has no right to stop the flour *in transitu* by reason of matters suggested not necessary to refer to in detail since, in our opinion, plaintiff must rely upon the strength of its own title to the property or right to the possession thereof. *Updyke v. Wheeler*, 37 Mo. App. 680; *Teichman v. American Bank*, 27 Mo. App. 676; *Boler v. Cohen*, 42 Mo. App. 97. Plaintiff's title is founded upon a fraudulent, void and unlawful bill of lading issued in the face of the prohibition of the statute and it in consequence has no title or right to the possession which could support a judgment in its favor.

The result of the views to which we have given expression is to approve of the interpretation given to the statute by the circuit court and we therefore affirm the judgment. GILL, J., concurs. SMITH, P. J., not sitting.