AETNA NATIONAL BANK, Respondent, v. UNION PACIFIC RAILWAY COMPANY, Appellant.

Kansas City Court of Appeals, February 15, 1897.

1. **Bills of Lading:** STATUTE: VOID.    Under the Missouri statutes common carriers can not issue a bill of lading unless the freight shall have been actually shipped and put on board and shall at the time actually be delivered to the car, and bills issued in the face of the statute are void and do not convey the property.

2. ——: TRANSFER: STOPPAGE IN TRANSITU. M shipped flour on the U road to G and sent him U's bills of lading therefor. G delivered the same to C road, took new bills of lading for further shipment of the flour and sold the same to plaintiff, when, in fact, the flour was in possession of the U road in another state. G failed the same day and plaintiff notified the U road of its ownership of the property. After plaintiff's claim M stopped the flour *in transitu*. The C road upon being sued surrendered the U road's bills of lading to plaintiff. *Held*, that M and plaintiff's equities were equal and plaintiff's legal title would prevail and M's lien for the purchase price by way of stoppage *in transitu* must be asserted before the plaintiff's rights intervened.

*Appeal from the Jackson Circuit Court.*—HON. C. L. DOBSON, Judge.

AFFIRMED.

*Beebe & Watson* for appellant.

(1) Plaintiff alleged in its amended petition that "it was the owner of the flour in controversy and entitled to the possession of same, and that the Union Pacific Railway Company has appropriated said carload of flour to its own use and now refuses to deliver up the same or to pay this plaintiff therefor." This is an action for conversion and in order to recover in such action plaintiff must prove that it was the owner of the property before a recovery can be had. *Sherman v. Com. Print. Co.*, 29 Mo. App. 31; *Dusky v. Rudder*, 80 Mo. 400; 4 Am. and Eng. Encyclopedia of Law, p. 108. (2) Plaintiff can not claim title to the flour shipped by Gothenberg Roller Mills by reason of Memphis & Charleston Railway Company's bill of lading, because such title is found upon a fraudulent bill of lading issued in violation of chapter 18, Revised Statutes, 1889. *Bank v. Water Power*, 58 Mo. App. 532. (3) It can not claim title through Union Pacific bill of lading because its suit is not based upon such instrument, and it did not have such bill of lading when this suit was

instituted.    (4) "Until the delivery is actual and abso-
lute the seller may suspend it and invoke the authority
of any intermediary to effect it." "And the insolvency
of the purchaser is a sufficient justification for exercis-
ing the seller's right, though the sale be unconditional
and time be given the purchaser." *Heinz v. R. R.*, 82
Mo. 236; *Klein v. Fisher*, 25 Mo. App.    572; *Scott
Bros. v. Dry Goods Co.*, 48 Mo. App. 524, 525. There-
fore, the Gothenberg Roller Mills had the right of
stoppage *in transitu* against every person except a pur-
chaser for value without notice.    Hutchinson on Car-
riers, secs. 409 and 414; *Klein v. Fisher, supra; Skil-
ling v. Bollman*, 73 Mo. 670, 671. (5) Plaintiff was not
a purchaser of Union Pacific bills of lading for value
without notice.    It acquired these bills of lading, not
by indorsement and transfer from Gorsuch, but by an
order of court, long after plaintiff had notice that the
consignor, the Gothenberg Roller Mills, had stopped
said cars and ordered them delivered at Kansas City to
D. B. Kirk & Company.    It was not an innocent pur-
chaser for value without notice of consignor's rights.
Porter's Law on Bills of Lading, secs. 532, 535; Hutch-
inson on Carriers, sec. 414; *Barnard v. Campbell*, 55
N. Y. 456; s. c., 58 N. Y. 79; *Newhall v. R. R.*, 51
Cal. 345; *Klein v. Fisher, supra; Dymock v. R. R.*,
54 Mo. App. 406; *Skilling v. Bollman, supra; Loeb v.
Peters*, 63 Ala. 243; *Harris v. Pratt*, 17 N. Y. 249;
*Lessassier v. Southwestern*, 2 Woods, 35; *O'Brien v.
Norris*, 16 Md. 122; *Naylor v. Denme*, 8 Pick. 199.

*T. B. Buckner* for respondent.

(1) When the Gothenberg Roller Mills delivered to
Gorsuch its bills of lading issued by appellant, it thereby
delivered the freight, and its right of stoppage in tran-
sit ceased and when the railway company redelivered

to said Gothenberg Roller Mills the freight without requiring a surrender of its bills of lading it did so at its peril. *R'y Co. v. McLiney*, 36 Mo. App. 166; *Skilling v. Bollman*, 73 Mo. 665; *Bank v. R'y Co.*, 62 Mo. App. 531; *Dickson v. Elevator Co.*, 44 Mo. App. 498; *R'y Co. v. Johnson*, 45 Neb. 57; *Bank v. R'y Co.*, 33 S. W. Rep. 521.    (2) When Gorsuch after receiving said bills of lading, delivered the bills of lading to the receivers of the Memphis & Charleston railway company, he delivered to them the freight represented in said bills of lading. Authorities, *supra; Newhall v. R. R.*, 51 Cal. 345; 2 Rorer on Railroads, p. 1345; Benjamin on Sales, sec. 813.    (3) The possession of the receivers of the Union Pacific bills of lading was the possession of appellant at all times, and the respondent having become invested with the possession of said bills of lading before judgment, it is entitled to judgment for the conversion of said flour. (4) The Gothenberg Roller Mills lost its right to stop said flour when it delivered its bills of lading to Gorsuch, and having lost it never at any time regained it. The bills of lading being outstanding at the time, the appellant had no right to deliver the flour without a surrender of its bills of lading. The owner of said flour is estopped from claiming it.    18 Am. and Eng. Encyclopedia of Law, pp. 610, 627, 634, 641; *Cowdery v. Venderburg*, 101 U. S. 572; *Dowes v. Kidder*, 84 N. Y. 121.    (5) Appellant was informed by the respondent before it redelivered to the Gothenberg Roller Mills said freight, that the respondent had a claim against said flour. If the respondent had only an equitable right to said flour, appellant had notice of that equity before it surrendered said flour, and would be liable to plaintiff therefor.    (6) When one of two innocent parties must suffer, that party must suffer who has put it into the power of a third party to perpetrate

a fraud. The Gothenberg Roller Mills, by delivering to Gorsuch its bills of lading, invested him with such *indicia* of ownership as to allow him to deal with it as his own. *R'y Co. v. Johnson*, 45 Neb. 57; 18 Am. and Eng. Encyclopedia of Law, p. 634; *McNeil v. Bank*, 47 N. Y. 325; *Bank v. Bank*, 71 Mo. 183. (7) Respondent is entitled to recover on the Union Pacific bills of lading because it was in equity if not in law entitled to the possession of them ·when this suit was brought, and appellant had knowledge of that fact, and since the bringing of said suit it has become invested with the actual possession of said bills of lading. (8) A claim for the conversion of goods is assignable and the transfer of a bill of lading will pass to the transferee the claim of the transferrer for the conversion of goods represented by such bill of lading. *Dickson v. Elevator Co.*, 44 Mo. App. 498.

ELLISON, J.—On September 15, 1892, the Gothenberg Roller Mills, of Gothenberg, Nebraska, delivered a car of flour to Union Pacific Railway Company, sold and consigned to N. F. Gorsuch, Memphis, Tennessee, care of Kansas City, Ft. Scott & Memphis Railway, at Kansas City, Missouri, and took from said Union Pacific Railroad Company its bill of lading for said flour, and on September 16, 1892, said STATEMENT.    Gothenberg Roller Mills delivered at Gothenberg, Nebraska, another car of flour to Union Pacific Railway Company, consigned same as car above mentioned, and received a Union Pacific bill of lading therefor. The Gothenberg Roller Mills sent these bills of lading, with drafts attached, to· a bank in Kansas City with instructions to deliver them to N. F. Gorsuch, upon his accepting the drafts. Gorsuch accepted the drafts and the bills of lading were so delivered to him on the nineteenth day of September, 1892, at Kansas

City. After Gorsuch received the bills of lading above mentioned and on the same day, he took them to the agent at Kansas City of the receivers of the Memphis & Charleston Railroad Company, who were then operating its railroad running east and south from Memphis, Tennessee, and delivered them to such agent and took other bills of lading of Memphis & Charleston Railway Company in lieu thereof, issued to him by said receivers of the Memphis & Charleston Railway Company, consigning the cars of flour to a point beyond Memphis, Tennessee. After Gorsuch had received the Memphis & Charleston Railway Company's bills of lading in lieu of the Union Pacific Railway Company's bills of lading, he drew a draft for each of the cars of flour on J. C. Boyd, at Greenville, South Carolina, and attached one of the drafts to each of the Memphis & Charleston Railroad Company's bills of lading, and on said nineteenth day of September, 1892, took the drafts and bills of lading to the plaintiff bank, and sold, indorsed and delivered the same to the plaintiff and received the face of said drafts, less one per cent discount, as pay therefor. That on the afternoon of September 19, 1892, Gorsuch failed and made an assignment for the benefit of his creditors, which assignment was after the sale of the drafts to plaintiff's bank, and after he had received his pay therefor. That on the twenty-third day of September, 1892, the Gothenberg Roller Mills notified the Union Pacific Railway Company, which had transported the flour to, and then had it in its possession in said cars at, Kansas City, Missouri, to stop the same and not deliver it to N. F. Gorsuch. That the Union Pacific Railway Company then refused to deliver the flour to the Kansas City, Ft. Scott & Memphis Railroad Company, or to carry same forward or to deliver the same to plaintiff, but redelivered it to the order of the Gothenberg Roller Mills Company, at

Kansas City, Missouri.   At no time was the flour ever in the possession of the agents or receivers of the Memphis & Charleston Railway Company, but on the contrary it was at all times in possession of Union Pacific Railway Company until redelivered in accordance with the orders of the Gothenberg Roller Mills Company. That afterward plaintiff's attorney called upon the Union Pacific Railway Company, before the cars were turned over to the Gothenberg Company, and was told by the agent of the Union Pacific Railway Company that the company would inform him if any effort was made by consignor to stop said cars.   The attorney was afterward informed that the consignors had stopped the flour.   This was prior to plaintiff bringing any suit for the value of the flour.   Suit was first brought against the Memphis & Charleston Railway Company, and then an amended petition was filed making the Union Pacific Railway Company a party.   At the time the Union Pacific Railway Company was made a party, plaintiff knew that the consignor had stopped the flour. Afterward the Memphis & Charleston Railway Company tendered the Union Pacific Railway Company's bills of lading into court, in said suit for plaintiff, and judgment was rendered on such tender in favor of the Memphis & Charleston Railway Company, and at next term the case was retried on plaintiff's third amended petition, which set up the claim that plaintiff was the owner and holder of the Union Pacific Railway Company's bills of lading, and judgment was given for plaintiff.

From the foregoing statement it will be seen that the bills of lading which plaintiff received from Gorsuch were issued to him at Kansas City, Missouri, by the Memphis & Charleston Railroad Company in which it acknowledged receipt of a large number of

sacks of flour of certain weight, in good
order and condition, and agreeing to
transport the same from Memphis, Ten-
nessee, to Greenville, South Carolina. At the time
these bills of lading were issued, the flour was not in
the possession of the Memphis & Charleston road, but
was in the possession of the Union Pacific railroad in
the state of Nebraska. Furthermore, the Memphis &
Charleston road is not a road entering Kansas City,
and the bills of lading issued by it, though dated at
Kansas City, were for transportation from Memphis,
Tennessee, to Greenville, South Carolina. The Mem-
phis road not only had not received the flour when it
issued the bills of lading, but it was physically impos-
sible for it to have received the flour at the time and
place stated, since it had no road in operation at that
place and the flour was not at that place. It is there-
fore manifest that the bills of lading were fraudulent
and void and that they were issued in direct violation
of the statutes of the state. R. S., 1889, sections 743,
746, 747. We held in *Bank v. Water Power*, 58
Mo. App. 532, that the statute, as it plainly expresses,
requires that the carrier shall not issue a bill of lading
unless the freight shall have been *actually shipped and
put on board*, and shall be at the time *actually* deliv-
ered to the car; and that a bill of lading issued in
the face of the statute was void and did not convey or
transfer the property falsely represented to have been
received by the carrier. It is not necessary to again
go over the reason upon which the statute rests. Coun-
sel has advanced an argument that the bill of lading is
the property named in it, that the delivery of a bill of
lading is a delivery of the property and that therefore
when the bill issued by one carrier is delivered to an-
other carrier, the property is actually delivered to such
carrier on board its cars, notwithstanding the *fact* may

*Margin note:* BILLS of lading: statute: void.

be that the property itself is at some distant point or, indeed, may not at the time be in existence at all. A statement of this contention will be sufficient without further comment.

But the record in this cause brings up the question whether plaintiff's case depends for support on the bills of lading issued by the Memphis road. The bills issued by the Union Pacific were de-livered over to the Memphis road and the latter issued its bills to Gorsuch for the same property and he negotiated them to plaintiff. If Gorsuch had negotiated the Union Pacific bills to plaintiff for value· before the property was stopped *in transitu*, or, if he had thus negotiated them after the property was stopped, if plaintiff had no notice of the· stoppage, it would have been entitled to the property represented by the bills. For, in such case, the vendor and the purchaser of the bills without notice being equally innocent, the loss should fall upon him whose act put it in the power of the vendee to impose upon an innocent party. And the further reason that the purchaser of the bills of lading has not only the equity aforesaid in his favor but he has, by the purchase, acquired the legal title; and when equities are equal the legal title still prevails. Hutchison on Carriers, section 414; Porter's Bills of Lading, sections 533, 534; *Lickbarros v. Mason*, 2 T. R. 63; *Newhall v. Railway*, 51 Cal. 345. This is the effect of the holding .of the majority of the court in *Dymock v. Railway*, 54 Mo. App. 409.

But Gorsuch did˙ not negotiate these bills to the plaintiff. He transferred them to the Memphis road and received in their stead the bills of the latter road and it was these which the plaintiff bought. Yet was this not, in effect, so far as concerns the application of the principle stated above, a negotiation to the plain-

*Marginal note: TRANSFER: stoppage in transitu.*

tiff of the Union Pacific bills? By reason of the vendor putting Gorsuch in possession of the Union Pacific bills as the owner, he was enabled to place and deliver them to the Memphis road and take from the latter its bills which were intended to stand in the place of the bills of the former road. The fact that the bills of the Memphis road were void was due to the fact that the property which they purported to represent was not delivered to the latter road. As soon as plaintiff learned that the bills of the Memphis road had been issued without a receipt of the property, it notified the Union Pacific of its claim of ownership of the property. And this notice was *before* the latter road had been notified that Gothenberg claimed the right of stoppage *in transitu.* Afterward the plaintiff, upon surrendering the bills of the Memphis road, received from the latter the Union Pacific bills and now holds them.

These considerations lead us to the conclusion that plaintiff's claim to the property was superior to that of Gothenberg. The full title to the property was in Gorsuch with full power of disposal, subject only to the right of Gothenberg to a lien for the purchase price enforced by way of stopping *in transitu.* This lien must be asserted before the rights of innocent third parties intervene. It was not asserted in this case until after plaintiff's rights attached in the manner we have stated. We feel constrained, therefore, to affirm the judgment. GILL, J., concurs, SMITH, P. J., not sitting.