THE WATKINS NATIONAL BANK, Respondent, v. THE CLEVELAND, CINCINNATI, CHICAGO & ST. LOUIS RAILWAY COMPANY, Appellant.

**Kansas City Court of Appeals, February 5, 1906.**

1. **COMMON CARRIERS: Bills of Lading: Statute: Damages.** Under the statute a common carrier is prohibited from issuing bills of lading until it has actually received the freight itself and is liable in damages to those injured by the violation of the statute.

2. **———: ———: Agent: Jury Question.** An issue of fact as to whether a certain railroad was the agent of another railroad for receiving certain freight is properly submitted to the jury and its finding is final.

3. **———: ———: Subsequent Receipt of Freight.** A receipt of the freight after the issue of the bill may cure the invalidity between the parties but cannot have such effect in the case under judgment where a third party is involved.

4. **———: ———: Through Contract.** A contract for through shipment does not prevent the carrier from getting possession of the property before issuing the bill of lading.

5. **———: ———: Evidence: Letters.** Certain letters are held admissible in evidence and the judgment is affirmed because for the right party.

Appeal from Jackson Circuit Court.—*Hon. John G. Park,* Judge.

AFFIRMED.

*Marley, Swearingen & Utley* for appellant.

(1) The letters of Boisseau, dated September 7 and 17, 1903, and November 6, 1903, were inadmissible in evidence, as they were in no manner a part of the *res gestae* connected with issuing the bills of lading on May 28 and May 29, 1903; nor was there any evidence of any authority having been given to Mr. Boisseau to make

any admission of any kind on behalf of the company. Helm v. Railroad, 98 Mo. App. 425; Midland Lbr. Co. v. Kreeger, 52 Mo. App. 422; Bevis v. Railroad, 26 Mo. App. 19; McDermott v. Railroad, 73 Mo. 516; Adams v. Railroad, 74 Mo. 553; Aldridge v. Furnace Co., 78 Mo. 559; Bergeman v. Railroad, 104 Mo. 86; Corrister v. Railroad, 25 Mo. App. 627; Adams v. Railroad, 74 Mo. 556; Lubey v. Railroad, 17 N. Y. 133; Corbett v. Railroad, 26 Mo. App. 625; King v. Ins. Co., 101 Mo. App. 173, and authorities there cited; Chillicothe v. Raymore, 80 Mo. 185; McDermott v. Railroad, 73 Mo. 518; Scovill v. Glasner, 79 Mo. 455; Huber Mfg. Co. v. Hunter, 78 Mo. App. 87, and authorities there cited. (2) The Big Four had a right to contract to carry the flour from Kansas City to New York and to issue its bills of lading at Kansas City therefor. Coal & Gas Co. v. Railroad, 35 Mo. 84; Railroad v. Railroad, 135 Mo. 202; Wyman v. Railroad, 4 Mo. App. 38; Barrett v. Railroad, 9 Mo. App. 229; Cherry v. Railroad, 61 Mo. App. 315; Showalter v. Railroad, 84 Mo. App. 597; Stock Co. v. Railroad, 87 Mo. App. 334; Loan and Trust Co. v. Ry. 120 Fed. 877; Noyes v. Railroad, 27 Vt., 112; Biglow v. Railroad, 104 Wis. 112; Ry. v. Bayles, 19 Colo. 348; Monell v. Railroad, 67 Barb. 533; Buffett v. Railroad, 40 N. Y. 171; Mirach v. Railroad, 107 U. S. 102. (3) Being partners *quo ad hoc* the Missouri Pacific Railway Company was the agent of the Big Four for the purpose of receiving, holding and forwarding the two cars of flour. Cargill v. Corby, 15 Mo. 425; Martin v. Lutkewitte, 50 Mo. 58; Fertilizer Co. v. Reynolds, 79 Ala. 497; Sargent v. Henderson, 79 Ga. 268; Hoffman v. Zoll, 2 Ind. App. 287; Reitz v. Regnier, 27 Kan. 94; Prince v. Crawford, 50 Miss. 344; Bank v. Underhill, 102 N. Y. 336; Monell v. Railroad, 67 Barb. 531; Bank v. Express Co., 3 Otto 174. (4) The contract of carriage made by the Big Four with E. E. Pierson was a through contract for transportation of flour from Kansas City, Missouri, to New York. McCann v. Eddy, 133 Mo. 66; Dimmitt v.

Railroad, 103 Mo. 440; Grain Co. v. Railroad, 176 Mo. 471; Sash & Door Co. v. Railroad, 177 Mo. 650. (5) Sections 5052, 5053, 5054, 5055 and 5056, Revised Statutes 1899, should be strictly construed, because: (a) They are highly penal, it being necessary that a crime shall be committed in order to create a cause of action thereunder. State v. Bryant, 90 Mo. 534; State v. Gritzner, 134 Mo. 512; State v. Howard, 137 Mo. 289; Rozell v. Harmin, 103 Mo. 139; State v. Reed, 125 Mo. 43. (b) They are in derogation of the law merchant. Scharff v. Meyer, 133 Mo. 428; Shaw v. Railroad, 101 U. S. 565. (6) Section 5052, Revised Statutes 1899, is aimed at the false recital of receipt of goods, not at the contract to carry. State v. Kirby, 115 Mo. 446; Bank v. Water Power Co., 58 Mo. App. 532; Robinson v. Railroad, 16 Fed. 57; The L. J. Farwell, 8 Bissell 64; Rowley v. Biglow, 12 Pick. 314; Halliday v. Hamilton, 11 Wallace 565; The Idaho, 93 U. S. 575.

*Stewart Taylor* for respondent.

(1) The issuance of the bills of lading without possession of the flour was contrary to sections 5052-5055, Rev. Stat. 1899. (2) The same sections give the plaintiff the right to recover all damages immediate or consequential. (3) The possession of a bill of lading issued by another railroad company is not the actual possession required by the statute, and is no defense. Aetna National Bank v. Power Co., 58 Mo. App. 532; Bank v. Railway, 69 Mo. App. 246; Smith v. Railway, 74 Mo. App. 48. (4) The letters of the freight claim agent were competent, because the admissions of such officers made in the execution of the duties imposed on them and concerning a matter upon which they are called on to act, and which matter is within the scope of the authority usually exercised by them are evidence against the corporation. Northrup v. Ins. Co., 47 Mo. l. c. 442. (5) The defendant is estopped from interposing the defense that Missouri Pacific was its agent and the pos-

session of the latter its own possession, as it is inconsistent with the position taken by the defendant in its letters through Boisseau. Hammon v. Myer, 45 Ark. 50; Railroad v. McCarty, 96 U. S. 258; Gould v. Banks, 8 Wend. 562; Holbrook v. Wright, 24 Wend. 169; Everett v. Saltus, 58 Wend. 474; Duffy v. Donovan, 46 N. Y. 223; Winter v. Colt, 7 N. Y. 288; Mooney v. Elder, 56 N. Y. 238; Meinche v. Falk, 61 Wis. 623; Davis v. Dix, 64 Fed. 411; Ballou v. Sherwood, 32 Neb. 689; Harris v. Chapman, 9 Utah 105; Frenzer v. Dufrene, 58 Neb. 436; Wallace v. Elevator Co., 36 Minn. 465; Wyatt v. Henderson, 31 Or. 55; St. Louis v. Gas Co., 5 Mo. App. 524; McDonald v. Hooker, 57 Ark. 638.

ELLISON, J.—Plaintiff brought this action to recover damages charged to have been sustained by reason of defendant's having issued two bills of lading in violation of chapter 79, Revised Statutes 1899. It recovered judgment in the trial court.

I.   It appears that two cars of flour were shipped from a point in western Kansas to Kansas City, Missouri, over the Missouri Pacific Railway Company. That the bills of lading therefor were owned by one Pierson, and were mailed from point of shipment to his agent at Kansas City. After the flour arrived in Kansas City and was on the track of the Missouri Pacific, and was yet in cars as originally shipped, this agent surrendered the bills of lading to that company's general freight agent at Kansas City and took from him two other bills of lading, one for each car, reciting that the cars were received at Kansas City. These bills showed that the flour was destined for New York City over the Missouri Pacific as far as St. Louis, Mo. Pierson's agent then took the two bills to an agent, which defendant maintained at Kansas City, Missouri, and the latter took them up and issued to Pierson the two bills in controversy, reciting that the defendant had received the flour from Pierson in good order and condition and agreeing to carry it to

destination over its road, or otherwise, for a through rate named. Pierson then drew his draft for the shipments on H. A. Thissell, New York City, attached it to the bills of lading and negotiated the same to the plaintiff's bank. The flour was afterwards so damaged by the unprecedented flood of 1903, while yet on the tracks of the Missouri Pacific railway at Kansas City, as to be practically worthless. After the flood the flour was taken over the Missouri Pacific to St. Louis, where one car was received by defendant and taken as far as Cleveland, Ohio, where a connecting carrier refused it and it was sold by defendant for a small sum. The other car was refused by defendant and was sold by the Missouri Pacific for a small sum also. It is stated that the proceeds of these sales did not amount to more than the freight charges.

The facts were the defendant had no railway at Kansas City, nor in the State of Missouri, and, of course, had not received the flour as stated in the bills of lading. The statute, chapter 79, Revised Statutes 1899, section 5052, prohibits any railroad or other transportation company from issuing a bill of lading for freight unless such freight has been, at the time, actually shipped and put on board of its cars to be carried as expressed in such bill. "The title to this chapter and every section of the act indicate the purpose of its enactment. It was designed to prevent the issue of *false bills of lading and warehouse receipts.*" [State v. Kirby, 115 Mo. 440.] The law limiting the power and authority of an agent of a public carrier to bind such carrier is so strict that it requires that before the authority exists in the agent, so far as to bind the carrier, the freight must have been *actually* received on the carrier's vessel or car. [Bank v. Laveille, 52 Mo. 380; Schooner Freeman v. Buckingham, 18 How. 182; Pollard v. Vinton, 105 U. S. 7.] The frequent frauds thus practiced by agents of carriers issuing bills of lading and the carrier escaping liability to endorsees of such bills, because the freight

was not actually received and shipped, as well as other reasons, led to the enactment of this stringent statute, which absolutely prohibits, under most severe punishments, the issuing of such bills until the carrier has *actually received the freight itself*. The transaction in this case was in the face of the statute. The freight was in the possession of another transportation company and, in point of fact, was never all delivered to the defendant. One car was refused by defendant; and the other, though received, was rejected by a connecting carrier; each of these refusals on account of the destruction of the flour as a commercial commodity. We gave construction to the statute relied upon by plaintiff in the cases of Bank v. Water Power Co., 58 Mo. App. 532; Bank v. Railway, 69 Mo. App. 246; and Smith v. Railway, 74 Mo. App. 48; and need do no more now on this branch of the present controversy than to refer to those cases.

II. But defendant set up in its defense that, notwithstanding it had no line of road at Kansas City, nor in Missouri, yet it had a freight agent at Kansas City to procure freight for transportation to the east over its line or lines of road, who was authorized to sign and issue bills of lading in its name. That this agent issued the bills in controversy and that the Missouri Pacific railway, in whose cars and in whose actual possession the flour was at the time, was the *agent of this defendant and, as such, had possession of the flour for it.* That issue of fact regarding the existence of such agency of the Missouri Pacific railway was submitted in instructions and the finding was against the claim. That question was therefore determined against defendant.

III. But is is urged that if the carrier afterwards does in fact receive the freight, as under the prior issued bill of lading, that he becomes bound. It has been decided that a carrier could cure the invalidity of the bill of lading by such after receipt, and we think, as to the

mere matter of his liability to the shipper or the shipper's assigns, he could. [The Idaho, 93 U. S. 575; Robinson v. Railway, 16 Fed. Rep. 57; The Farwell, 8 Bissell 64.] But we do not see how that can affect the rights of the parties in this case. Here, if the defendant had obeyed the statute and refused to issue a bill of lading until the cars of flour had been actually delivered to it, there would not have been any issued, for, at that time, its commercial value had been destroyed by the flood. Thus, the plaintiff would not have had the opportunity to be deceived and damaged by the act of defendant.

IV. Neither do we see how the right of a carrier to contract for through shipments of freight beyond its own line can affect the disposition of this case under the statute in question. A contract for a through shipment does not prevent the carrier from first getting possession of the property to be shipped.

V. We will not enter into a discussion of the objection made to the letters of defendant's agent Boisseau. We are satisfied from the facts indisputably, shown, in truth practically conceded, that no other judgment could have been had than the one rendered. But, in our opinion, the letters were manifestly admissible and were therefore properly received in evidence.

Th judgment is affirmed. All concur.